Jennifer Liakos, Esq. (SBN 207487)
JLiakos@NapoliLaw.com
NAPOLI SHKOLNIK PLLC
525 South Douglas St., Suite 260
El Segundo, CA 90245
Telephone: 310-331-8224
Facsimile: 310-736-2877

*Attorney for Plaintiffs*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR LOS ANGELES COUNTY

RAMONA GIBSON; DOLLETHEA FOX;
PHYLLIS DUPREE; JENNIFER W.
EDWARDS; GEORGETTE ENWRIGHT;
CAROLYN K. ESTES; ERMA
FARRINGTON; MARY FAULKNER;
MARTHA A. FOSTER; AUDREY FRIDIA;
LINDA FULLMORE; MIKKI GARZA;
JEANNIE GERBER; PAMELA GERVIN;
VERTHAVIA GIBBS; PHYLLIS M. GILL;
SHANNA GIVENS; SALLIE R. GORE;
SHELBY GRANT; AMELIA GREEN;
ROBYN GREER; CHARLOTTE GUNN;
TANYA GURNEY; DORCILLE HADLEY;
GLENDA HAMNER; BEVERLY
HARCOURT; BETTY HAWKINS;
NANCY HEARNE; ADELFA HEVENER;
MOVELL HOLLOWAY; BENDETTA
HOSNEY; ANNIE L. JACKSON; PEGGY
JACKSON; WANDA JACKSON; ANITA
JACOBS; ARLENE JEFFERSON
THROWER; CASSANDRA JOHNSON;
TANYA JOHNSON; DEBORAH JOLLA;
LILLIE JONES; CLEDELL KEMP; MARIE
LACKEY; ANGELA ANITA LAMB;
GWEN LANCE; RACINE LESTER;
SHAUNTEL MAXWELL; FELICIA
MCCLINTON; BRITTANY J. MEECE;
KIMBERLY MENDOZA; AND
DEBORAH MEYERS,

Plaintiffs,

Case No. **BC 686616**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Negligence
2. Strict Liability – Failure to Warn
3. Intentional Misrepresentation
4. Concealment
5. Negligent Misrepresentation
6. Intentional Infliction of Emotional Distress
7. Loss of Consortium

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00044



v.

SANOFI U.S. SERVICES INC., formerly
known as SANOFI-AVENTIS U.S. INC,
SANOFI-AVENTIS U.S. LLC, separately
and doing business as WINTHROP U.S.,
SANDOZ, INC., McKESSON
CORPORATION doing business as
McKESSON PACKAGING, HOSPIRA,
INC., HOSPIRA WORLDWIDE, LLC f/k/a
HOSPIRA WORLDWIDE, INC., SANDOZ,
INC., and ACCORD HEALTHCARE, INC.,

Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00045

All plaintiffs who are residents of California respectfully submit the following Complaint and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC., (herein collectively referred to as the "Defendants") , and allege the following upon personal knowledge, information, belief, and investigation of counsel.

All plaintiffs who are residents outside of California respectfully submit the following Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business as McKESSON PACKAGING, only, and allege the following upon personal knowledge, information, belief, and investigation of counsel.

## NATURE OF THE CASE

1. Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

2. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss,

1

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00046

1  and seek damages relating to Defendants' distribution, labeling, advertising, marketing,

2  manufacturing, promotion, and sale of TAXOTERE®.

3

4  ### JURISDICTION AND VENUE

5      3.     This Court has jurisdiction over this action pursuant to Article 6, §10 of the

6  California Constitution and California Code of Civil Procedure § 410.10. The amount in

7  controversy exceeds the jurisdictional limit of $25,000.

8      4.     This Court has personal jurisdiction over Defendants, each of which is licensed to

9  conduct or is systematically and continuously conducting business in the State of California,

10  including, but not limited to, the marketing, advertising, selling, and distributing of drugs,

11  including TAXOTERE®, to the residents in this state.  Defendants have sufficient minimum

12  contacts in California and intentionally avail themselves of the markets within California

13  through the promotion, sale, marketing, and distribution of their products, including

14  TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

15      5.     Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

16  Defendants transact business in Los Angeles County and the events complained of occurred in

17  Los Angeles County.

18  ### PARTIES

19      1.     Plaintiff RAMONA GIBSON is a natural person currently residing in California,

20  and received chemotherapy treatment with TAXOTERE®. She was prescribed and

21  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

22  packaged, distributed, and sold by Defendants. RAMONA GIBSON has suffered damages

23  as a result of Defendants' illegal and wrongful conduct alleged herein.

24      2.     Plaintiff DOLLETHEA FOX is a natural person currently residing in California,

25  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

26  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

27  distributed, and sold by Defendants. DOLLETHEA FOX has suffered damages as a result of

28  Defendants' illegal and wrongful conduct alleged herein.

2

Exhibit C
00047

1      3.     Plaintiff PHYLLIS DUPREE is a natural person currently residing in New

2  Jersey, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

3  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

4  packaged, distributed, and sold by Defendants. PHYLLIS DUPREE has suffered damages as a

5  result of Defendants' illegal and wrongful conduct alleged herein.

6      4.     Plaintiff JENNIFER W. EDWARDS is a natural person currently residing in

7  Alabama, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

8  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

9  packaged, distributed, and sold by Defendants. JENNIFER W. EDWARDS has suffered

10  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11      5.     Plaintiff GEORGETTE ENWRIGHT is a natural person currently residing in

12  South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed

13  and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

14  packaged, distributed, and sold by Defendants. GEORGETTE ENWRIGHT has suffered

15  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16      6.     Plaintiff CAROLYN K. ESTES is a natural person currently residing in Arizona,

17  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

18  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

19  distributed, and sold by Defendants. CAROLYN K. ESTES has suffered damages as a result of

20  Defendants' illegal and wrongful conduct alleged herein.

21      7. ·    Plaintiff ERMA FARRINGTON is a natural person currently residing in North

22  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

23  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

24  packaged, distributed, and sold by Defendants. ERMA FARRINGTON has suffered damages as

25  a result of Defendants' illegal and wrongful conduct alleged herein.

26      8.     Plaintiff MARY FAULKNER is a natural person currently residing in Georgia,

27  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

28  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

Exhibit C
00048

1 | distributed, and sold by Defendants. MARY FAULKNER has suffered damages as a result of
2 | Defendants' illegal and wrongful conduct alleged herein.

3 |      9.     Plaintiff MARTHA A. FOSTER is a natural person currently residing in Alaska,
4 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6 | distributed, and sold by Defendants. MARTHA A. FOSTER has suffered damages as a result of
7 | Defendants' illegal and wrongful conduct alleged herein.

8 |      10.    Plaintiff AUDREY FRIDIA is a natural person currently residing in Texas, and
9 | received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
10 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
11 | distributed, and sold by Defendants. AUDREY FRIDIA has suffered damages as a result of
12 | Defendants' illegal and wrongful conduct alleged herein.

13 |      11.    Plaintiff LINDA FULLMORE is a natural person currently residing in Georgia,
14 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
15 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
16 | distributed, and sold by Defendants. LINDA FULLMORE has suffered damages as a result of
17 | Defendants' illegal and wrongful conduct alleged herein.

18 |      12.    Plaintiff MIKKI GARZA is a natural person currently residing in Texas, and
19 | received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
20 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
21 | distributed, and sold by Defendants. MIKKI GARZA has suffered damages as a result of ·
22 | Defendants' illegal and wrongful conduct alleged herein.

23 |      13.    Plaintiff JEANNIE GERBER is a natural person currently residing in West
24 | Virginia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
25 | administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
26 | packaged, distributed, and sold by Defendants. JEANNIE GERBER has suffered damages as a
27 | result of Defendants' illegal and wrongful conduct alleged herein.

28 |

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00049

14.     Plaintiff PAMELA GERVIN is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. PAMELA GERVIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

15.     Plaintiff VERTHAVIA GIBBS is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. VERTHAVIA GIBBS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16.     Plaintiff PHYLLIS M. GILL is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. PHYLLIS M. GILL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17.     Plaintiff SHANNA GIVENS is a natural person currently residing in New Jersey, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SHANNA GIVENS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18.     Plaintiff SALLIE R. GORE is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SALLIE R. GORE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

19.     Plaintiff SHELBY GRANT is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00050

1  packaged, distributed, and sold by Defendants. SHELBY GRANT has suffered damages as a
2  result of Defendants' illegal and wrongful conduct alleged herein.

3       20.     Plaintiff AMELIA GREEN is a natural person currently residing in Illinois, and
4  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6  distributed, and sold by Defendants. AMELIA GREEN has suffered damages as a result of
7  Defendants' illegal and wrongful conduct alleged herein.

8       21.     Plaintiff ROBYN GREER is a natural person currently residing in Oklahoma,
9  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
10 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
11 distributed, and sold by Defendants. ROBYN GREER has suffered damages as a result of
12 Defendants' illegal and wrongful conduct alleged herein.

13      22.     Plaintiff CHARLOTTE GUNN is a natural person currently residing in Ohio,
14 and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
15 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
16 distributed, and sold by Defendants. CHARLOTTE GUNN has suffered damages as a result of
17 Defendants' illegal and wrongful conduct alleged herein.

18      23.     Plaintiff TANYA GURNEY is a natural person currently residing in Florida, and
19 received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
20 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
21 distributed, and sold by Defendants. TANYA GURNEY has suffered damages as a result of
22 Defendants' illegal and wrongful conduct alleged herein.

23      24.     Plaintiff DORCILLE HADLEY is a natural person currently residing in Texas,
24 and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
25 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
26 distributed, and sold by Defendants. DORCILLE HADLEY has suffered damages as a result of
27 Defendants' illegal and wrongful conduct alleged herein.
28

Exhibit C
00051

1        25.     Plaintiff GLENDA HAMNER is a natural person currently residing in

2  Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

3  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

4  packaged, distributed, and sold by Defendants. GLENDA HAMNER has suffered damages as a

5  result of Defendants' illegal and wrongful conduct alleged herein.

6        26.     Plaintiff BEVERLY HARCOURT is a natural person currently residing in Iowa,

7  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

8  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

9  distributed, and sold by Defendants. BEVERLY HARCOURT has suffered damages as a result

10  of Defendants' illegal and wrongful conduct alleged herein.

11        27.     Plaintiff BETTY HAWKINS is a natural person currently residing in Maryland,

12  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

13  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

14  distributed, and sold by Defendants. BETTY HAWKINS has suffered damages as a result of

15  Defendants' illegal and wrongful conduct alleged herein.

16        28.     Plaintiff NANCY HEARNE is a natural person currently residing in Louisiana,

17  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

18  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

19  distributed, and sold by Defendants. NANCY HEARNE has suffered damages as a result of

20  Defendants' illegal and wrongful conduct alleged herein.

21        29.     Plaintiff ADELFA HEVENER is a natural person currently residing in

22  California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

23  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

24  packaged, distributed, and sold by Defendants. ADELFA HEVENER has suffered damages as a

25  result of Defendants' illegal and wrongful conduct alleged herein.

26        30.     Plaintiff MOVELL HOLLOWAY is a natural person currently residing in South

27  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

28  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

7

Exhibit C
00052

1  packaged, distributed, and sold by Defendants. MOVELL HOLLOWAY has suffered damages

2  as a result of Defendants' illegal and wrongful conduct alleged herein.

3       31.    Plaintiff BENDETTA HOSNEY is a natural person currently residing in Texas,

4  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6  distributed, and sold by Defendants. BENDETTA HOSNEY has suffered damages as a result of

7  Defendants' illegal and wrongful conduct alleged herein.

8       32.    Plaintiff ANNIE L. JACKSON is a natural person currently residing in

9  Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11  packaged, distributed, and sold by Defendants. ANNIE L. JACKSON has suffered damages as a

12  result of Defendants' illegal and wrongful conduct alleged herein.

13       33.    Plaintiff PEGGY JACKSON is a natural person currently residing in Mississippi,

14  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. PEGGY JACKSON has suffered damages as a result of

17  Defendants' illegal and wrongful conduct alleged herein.

18       34.    Plaintiff WANDA JACKSON is a natural person currently residing in Arkansas,

19  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. WANDA JACKSON has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23       35.    Plaintiff ANITA JACOBS is a natural person currently residing in Maryland, and

24  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26  distributed, and sold by Defendants. ANITA JACOBS has suffered damages as a result of

27  Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00053

36.    Plaintiff ARLENE JEFFERSON THROWER is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ARLENE JEFFERSON THROWER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37.    Plaintiff CASSANDRA JOHNSON is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CASSANDRA JOHNSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38.    Plaintiff TANYA JOHNSON is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TANYA JOHNSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39.    Plaintiff DEBORAH JOLLA is a natural person currently residing in Arizona, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DEBORAH JOLLA has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40.    Plaintiff LILLIE JONES is a natural person currently residing in Indiana, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LILLIE JONES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41.    Plaintiff CLEDELL KEMP is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

Exhibit C
00054

1  distributed, and sold by Defendants. CLEDELL KEMP has suffered damages as a result of

2  Defendants' illegal and wrongful conduct alleged herein.

3       42.    Plaintiff MARIE LACKEY is a natural person currently residing in California,

4  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6  distributed, and sold by Defendants. MARIE LACKEY has suffered damages as a result of

7  Defendants' illegal and wrongful conduct alleged herein.

8       43.    Plaintiff ANGELA ANITA LAMB is a natural person currently residing in

9  Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11  packaged, distributed, and sold by Defendants. ANGELA ANITA LAMB has suffered damages

12  as a result of Defendants' illegal and wrongful conduct alleged herein.

13       44.    Plaintiff GWEN LANCE is a natural person currently residing in North Carolina,

14  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. GWEN LANCE has suffered damages as a result of

17  Defendants' illegal and wrongful conduct alleged herein.

18       45.    Plaintiff RACINE LESTER is a natural person currently residing in Ohio, and

19  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. RACINE LESTER has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23       46.    Plaintiff SHAUNTEL MAXWELL is a natural person currently residing in

24  California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26  packaged, distributed, and sold by Defendants. SHAUNTEL MAXWELL has suffered damages

27  as a result of Defendants' illegal and wrongful conduct alleged herein.

28

Exhibit C
00055

47.    Plaintiff FELICIA MCCLINTON is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. FELICIA MCCLINTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

48.    Plaintiff BRITTANY J. MEECE is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRITTANY J. MEECE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

49.    Plaintiff KIMBERLY MENDOZA is a natural person currently residing in California; and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KIMBERLY MENDOZA has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

1.    Plaintiff DEBORAH MEYERS is a natural person currently residing in Colorado, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DEBORAH MEYERS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

2.    The aforementioend Plaintiffs request to be coordinated for discovery purposes only to the Judicial Council Consolidated Proceeding 4908.

3.    Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

4.    Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United States.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00056

5.      SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants ."

6.      Sanofi U.S. Services Inc. develops products in therapeutic areas including cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

7.      The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

8.      Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States.

9.      Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

10.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

11.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals.

12.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, TAXOTERE®.

13.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

14.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States.

15.     Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for TAXOTERE®.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00057

1      16.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

2  sells, distributes pharmaceutical products, and does business under the name Winthrop U.S.,

3  which is a division within Sanofi-Aventis U.S. LLC.

4      17.     Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws

5  of the State of Delaware.

6      18.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in

7  transactions and conducted business within the State of Delaware and has derived substantial

8  revenue from goods and products disseminated and used in the State of Delaware. At all times

9  relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching,

10  analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing,

11  assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising

12  and/or selling the prescription drug known as TAXOTERE® to the public, including the

13  Plaintiff.

14      19.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

15  sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S.,

16  which is not a separately existing legal entity but rather is a business unit or division operating

17  within and part of Sanofi-Aventis U.S. LLC.

18      20.     At all times material to this lawsuit, the Sanofi Defendants were authorized to do

19  business within the State of California; did in fact transact and conduct business in the State of

20  California; derived substantial revenue from goods and products used in the State of California;

21  and supplied TAXOTERE® within the State of California.

22      21.     At all relevant times, and as more fully set forth below, the Sanofi Defendants

23  acted in conjunction with other affiliated, related, jointly owned and controlled entities or

24  subsidiaries, including each other, in the development, marketing, production, labeling,

25  promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public,

26  including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within

27  the course and scope of the agency, with respect to the conduct alleged in this Complaint, such

28  that any individuality and separateness between them had ceased and these Defendants became

Exhibit C
00058

1    the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

2    alleged herein.

3         22.    The Sanofi Defendants transact substantial business in California. The Sanofi

4    Defendants have sponsored or conducted clinical trials of their products in California, including

5    trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

6    University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

7    sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

8    treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

9    Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

10   epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

11   California, which terminated in 2012. In addition, Sanofi participates in ongoing research and

12   development collaborations with the University of California, San Francisco.

13        23.    In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

14   represented the majority, at €29.8 billion. Although generic docetaxel is now available,

15   TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

16   alone were €222 million.

17        24.    Sanofi spends large sums on California politics, mainly via four entities that share

18   the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

19   Aventis; and Sanofi-Aventis Group.

20        25.    For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

21   lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

22   in the state.

23        26.    Sanofi US contributes to political campaigns in California. Specifically, in 2016

24   Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

25   $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

26   Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

27   contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

28   Republican Party.

14

Exhibit C
00059

1        27.     Defendant McKesson Corporation is a Delaware corporation with its principal

2  place of business at One Post Street, San Francisco, California 94104.

3        28.     Upon investigation and belief, Plaintiffs are informed and believe that McKesson

4  was involved in the manufacture, distribution, marketing sale, labeling and design of

5  TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial

6  corporation in America, with over $800 billion in revenue every year. McKesson is the sole

7  supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the

8  nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest

9  independent and community pharmacies.

10       29.     McKesson Corporation is a distributor of pharmaceutical and health care products

11  that provides health information technology, medical supplies and care management tools.  Upon

12  information and belief, McKesson Corporation manufactured and supplied TAXOTERE®,

13  among other products to both hospitals and pharmacies.

14       30.     Upon investigation and belief, McKesson does business throughout the United

15  States and in the State of California, and regularly and continuously did business within this

16  judicial district including manufacturing, marketing, advertising, warning and precautions

17  attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson

18  Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available

19  products.

20       31.     Upon investigation and belief, McKesson manufactured marketed, sold and

21  distributed TAXOTERE® administered to Plaintiffs.

22       32.     Upon information and belief, McKesson was the actor engaged in the acts herein

23  alleged, acting through its agents and employees, at all times, the actions and omissions asserted

24  in this pleading were committed by agents or employees acting within the purpose and scope of

25  said agency and employment.

26       33.     At all relevant times, McKesson owns US Oncology, which supported a

27  significant amount of TAXOTERE® research and promotion.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00060

34.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

35.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

36.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

37.     Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

38.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

39.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

40.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein

16

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00061

1  and was at all times operating and acting with the purpose and scope of said agency, service,

2  employment, partnership, and joint venture.

3       41.    At all times relevant, Defendants were engaged in the business of developing,

4  designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into

5  interstate commerce throughout the United States, which necessarily includes California, either

6  directly or indirectly through third parties, subsidiaries or related entities, the drug

7  TAXOTERE®.

8  **DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING,**

9  **MARKETING, AND SALE OF TAXOTERE®**

10      42.    TAXOTERE® is a drug used in the treatment of various forms of cancer,

11  including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs

12  commonly referred to as taxanes.

13      43.    Taxanes are diterpenes produced by the plants of the genus Taxus (yews)

14  featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents

15  include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic

16  forms as well.

17      44.    TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers

18  Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food

19  and Drug Administration (FDA) in December 1992.

20      45.    The drug and chemical compound that would become known as TAXOTERE®

21  was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

22  and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased

23  potency taxane.

24      46.    The initial patent disclosing the formulation and computation of TAXOTERE®

25  was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in

26  March 1989.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00062

47.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

48.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

49.     Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

50.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

51.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

52.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in California and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent

Exhibit C
00063

1  promotion of TAXOTERE® at conferences including the annual meetings for the American

2  Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology

3  in 2010.

4      53.    Contrary to Defendants' claims of superior efficacy, post market surveillance has

5  shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

6  over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

7  existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

8      54.    A study of available clinical studies concerning the relative efficacy of taxanes in

9  the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*,

10  concluded that no significant differences were found in the efficacy and outcomes obtained with

11  TAXOTERE® or TAXOL®.

12      55.    A study published in 2008 in the New England Journal of Medicine, titled

13  *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was

14  more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy

15  with doxorubicin and cyclophosphamide.

16      56.    Despite the publication of these studies, Defendants continued to make false and

17  misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing

18  product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials

19  for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology,

20  comparing the efficacy of TAXOTERE® versus TAXOL®. Specifically, Sanofi-Aventis

21  utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the

22  Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi

23  and US Oncology. The study concluded that "TAXOTERE® demonstrated superior efficacy

24  compared with TAXOL®, providing significant clinical benefit in terms of survival and time to

25  disease progression, with a numerically higher response rate and manageable toxicities."

26      57.    Defendants' statements in the "reprint carrier" marketing the conclusions of the

27  2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that

28  TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

Exhibit C
00064

58.    As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). Cf. 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

59.    A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc., Civil Action No. 02-2964 (E.D. Pa. 2015).

60.    Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement

---

[1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]    Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00065

1  assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a

2  direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased

3  revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex*

4  *rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

5      61.    As a direct result of their wrongful conduct and illegal kickback schemes,

6  Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased

7  toxicity as compared to other available less toxic products such as TAXOL®.

8      62.    As a direct result of their aforementioned conduct, Defendants caused thousands

9  of individuals to be exposed to increased frequency and more severe side effects, including but

10  not limited to disfiguring permanent alopecia (hair loss).

11  **DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING**

12  **THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT**

**DISFIGURING HAIR LOSS**

13

14      63.    Although temporary alopecia, or hair loss, is a common side effect related to

15  chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and

16  marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as

17  with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

18      64.    Defendants knew or should have known that the rate of permanent alopecia

19  related to TAXOTERE® was far greater than with other products available to treat the same

20  condition as Defendants' product.

21      65.    Permanent baldness (permanent alopecia) is a disfiguring condition, especially for

22  women. Women who experienced disfiguring permanent alopecia as a result of the use of

23  TAXOTERE® suffer great mental anguish as well as economic damages, including but not

24  limited to loss of work or inability to work due to significant psychological damage.

25      66.    Although women might accept the possibility of permanent baldness as a result of

26  the use of TAXOTERE® if no other product were available to treat their cancer, this was not the

27  case. Before Defendants' wrongful conduct resulted in tens of thousands of women being

28  exposed to the adverse side effects of TAXOTERE®, there were already similar products on the

21

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00066

1  market that were at least as effective as TAXOTERE® and did not subject female users to the

2  same risk of disfiguring permanent alopecia as does TAXOTERE®.

3       67.    Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored

4  and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis

5  Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took

6  TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some

7  cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

8  intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

9  physicians, healthcare providers, patients, and Plaintiffs in the United States.

10       68.    In 2006, Defendants knew or should have known that a Denver-based oncologist

11  in the United States had observed that an increased percentage (6.3%) of his patients who had

12  taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

13  had stopped taking TAXOTERE®.

14       69.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

15  study, as well as reports from patients who had taken TAXOTERE® and suffered from

16  permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

17  warnings to physicians, healthcare providers, and patients in the United States, including

18  Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

19  from permanent disfiguring hair loss.

20       70.    Defendants chose to withhold this information in the United States despite

21  advising physicians, patients, and regulatory agencies in other countries, including the European

22  Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

23  loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

24  and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

25  "hair generally grows back" after taking TAXOTERE®.

26       71.    Users of TAXOTERE® were not presented with the opportunity to make an

27  informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

28  Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

Exhibit C
00067

1  compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

2  permanent alopecia.

3      72.    In other countries, Defendants published information to individual patients and

4  regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

5  December 2015, the words permanent alopecia or permanent hair loss did not appear in any

6  information published by Defendants in the United States.

7      73.    In December 2015, the FDA changed the safety labeling for TAXOTERE®

8  (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence

9  appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is

10  the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

11  "permanent alopecia" is not.

12      74.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands

13  of women were exposed to the risk of disfiguring permanent alopecia without any warning and

14  without any additional benefit.

15      75.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring

16  permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as

17  their health care providers, were deprived of the opportunity to make an informed decision as to

18  whether the benefits of using TAXOTERE® over other comparable products was justified.

19      76.    Defendants preyed on one of the most vulnerable groups of individuals at the

20  most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

21  the expense of unwary cancer victims simply hoping to survive their condition and return to a

22  normal life.

23      77.    Plaintiffs, as well as numerous other women, were the innocent victims of

24  Defendants' greed, recklessness, and willful and wanton conduct.

25
        **PLAINTIFFS' DIAGNOSIS, TREATMENT, AND**
26       **RESULTING DISFIGURING PERMANENT ALOPECIA**

27      78.    Plaintiff DOLLETHEA FOX was diagnosed with breast cancer. Following her

28  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOLLETHEA

23

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00068

1   FOX nor her treating healthcare providers were aware of or informed by Defendants that

2   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8   suit against Defendants was tolled by such delayed discover.

9         79.    Plaintiff DOLLETHEA FOX underwent her chemotherapy treatment. On

10   information and belief, McKesson Corporation distributed the TAXOTERE® that

11   DOLLETHEA FOX received.

12         80.    Plaintiff PHYLLIS DUPREE was diagnosed with breast cancer. Following her

13   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS

14   DUPREE nor her treating healthcare providers were aware of or informed by Defendants that

15   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21   suit against Defendants was tolled by such delayed discover.

22         81.    Plaintiff PHYLLIS DUPREE underwent her chemotherapy treatment. On

23   information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS

24   DUPREE received.

25         82.    Plaintiff JENNIFER W. EDWARDS was diagnosed with breast cancer.

26   Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

27   JENNIFER W. EDWARDS nor her treating healthcare providers were aware of or informed by

28   Defendants that disfiguring permanent alopecia can occur following treatment with

Exhibit C
00069

1  TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.
2  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair
3  loss as a result of receiving chemotherapy with TAXOTERE®.Due to Defendants' wrongful
4  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed
5  to her injuries, including, but not limited to, her development of alopecia. Accordingly,
6  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

7       83.    Plaintiff JENNIFER W. EDWARDS underwent her chemotherapy treatment. On
8  information and belief, McKesson Corporation distributed the TAXOTERE® that JENNIFER
9  W. EDWARDS received.

10      84.    Plaintiff GEORGETTE ENWRIGHT was diagnosed with breast cancer.
11 Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff
12 GEORGETTE ENWRIGHT nor her treating healthcare providers were aware of or informed by
13 Defendants that disfiguring permanent alopecia can occur following treatment with
14 TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.
15 Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair
16 loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful
17 conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed
18 to her injuries, including, but not limited to, her development of alopecia. Accordingly,
19 Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

20      85.    Plaintiff GEORGETTE ENWRIGHT underwent her chemotherapy treatment. On
21 information and belief, McKesson Corporation distributed the TAXOTERE® that
22 GEORGETTE ENWRIGHT received.

23      86.    Plaintiff CAROLYN K. ESTES was diagnosed with breast cancer. Following her
24 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROLYN K.
25 ESTES nor her treating healthcare providers were aware of or informed by Defendants that
26 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
27 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
28 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

Exhibit C
00070

1   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4   suit against Defendants was tolled by such delayed discover.

5        87.    Plaintiff CAROLYN K. ESTES underwent her chemotherapy treatment. On

6   information and belief, McKesson Corporation distributed the TAXOTERE® that CAROLYN

7   K. ESTES received.

8        88.    Plaintiff ERMA FARRINGTON was diagnosed with breast cancer. Following

9   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ERMA

10  FARRINGTON nor her treating healthcare providers were aware of or informed by Defendants

11  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18       89.    Plaintiff ERMA FARRINGTON underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that ERMA

20  FARRINGTON received.

21       90.    Plaintiff MARY FAULKNER was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY

23  FAULKNER nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

Exhibit C
00071

1   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2   suit against Defendants was tolled by such delayed discover.

3       91.    Plaintiff MARY FAULKNER underwent her chemotherapy treatment. On

4   information and belief, McKesson Corporation distributed the TAXOTERE® that MARY

5   FAULKNER received.

6       92.    Plaintiff MARTHA A. FOSTER was diagnosed with breast cancer. Following her

7   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARTHA A.

8   FOSTER nor her treating healthcare providers were aware of or informed by Defendants that

9   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16      93.    Plaintiff MARTHA A. FOSTER underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that MARTHA A.

18  FOSTER received.

19      94.    Plaintiff AUDREY FRIDIA was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff AUDREY

21  FRIDIA nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00072

95.     Plaintiff AUDREY FRIDIA underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that AUDREY FRIDIA received.

96.     Plaintiff LINDA FULLMORE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA FULLMORE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

97.     Plaintiff LINDA FULLMORE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA FULLMORE received.

98.     Plaintiff MIKKI GARZA was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MIKKI GARZA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

99.     Plaintiff MIKKI GARZA underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MIKKI GARZA received.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00073

1       100.    Plaintiff JEANNIE GERBER was diagnosed with breast cancer. Following her

2    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JEANNIE

3    GERBER nor her treating healthcare providers were aware of or informed by.Defendants that

4    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

5    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

6    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

7    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

8    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

9    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

10   suit against Defendants was tolled by such delayed discover.

11      101.    Plaintiff JEANNIE GERBER underwent her chemotherapy treatment. On

12   information and belief, McKesson Corporation distributed the TAXOTERE® that JEANNIE

13   GERBER received.

14      102.    Plaintiff PAMELA GERVIN was diagnosed with breast cancer. Following her

15   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PAMELA

16   GERVIN nor her treating healthcare providers were aware of or informed by Defendants that

17   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

19   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23   suit against Defendants was tolled by such delayed discover.

24      103.    Plaintiff PAMELA GERVIN underwent her chemotherapy treatment. On

25   information and belief, McKesson Corporation distributed the TAXOTERE® that PAMELA

26   GERVIN received.

27      104.    Plaintiff VERTHAVIA GIBBS was diagnosed with breast cancer. Following her

28   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VERTHAVIA

---

29

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00074

1   GIBBS nor her treating healthcare providers were aware of or informed by Defendants that
2   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
3   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
4   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
5   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
6   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
7   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
8   suit against Defendants was tolled by such delayed discover.

9       105.   Plaintiff VERTHAVIA GIBBS underwent her chemotherapy treatment. On
10  information and belief, McKesson Corporation distributed the TAXOTERE® that
11  VERTHAVIA GIBBS received.

12      106.   Plaintiff RAMONA GIBSON was diagnosed with breast cancer. Following her
13  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RAMONA
14  GIBSON nor her treating healthcare providers were aware of or informed by Defendants that
15  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
16  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
17  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
18  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
19  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
20  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
21  suit against Defendants was tolled by such delayed discover.

22      107.   Plaintiff RAMONA GIBSON underwent her chemotherapy treatment. On
23  information and belief, McKesson Corporation distributed the TAXOTERE® that RAMONA
24  GIBSON received.

25      108.   Plaintiff PHYLLIS M. GILL was diagnosed with breast cancer. Following her
26  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS M.
27  GILL nor her treating healthcare providers were aware of or informed by Defendants that
28  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00075

1 │ Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
2 │ completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
3 │ of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
4 │ herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
5 │ including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
6 │ suit against Defendants was tolled by such delayed discover.

7 │      109.    Plaintiff PHYLLIS M. GILL underwent her chemotherapy treatment. On
8 │ information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS M.
9 │ GILL received.

10 │      110.    Plaintiff SHANNA GIVENS was diagnosed with breast cancer. Following her
11 │ diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHANNA
12 │ GIVENS nor her treating healthcare providers were aware of or informed by Defendants that
13 │ disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
14 │ Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
15 │ completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
16 │ of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
17 │ herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
18 │ including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
19 │ suit against Defendants was tolled by such delayed discover.

20 │      111.    Plaintiff SHANNA GIVENS underwent her chemotherapy treatment. On
21 │ information and belief, McKesson Corporation distributed the TAXOTERE® that SHANNA
22 │ GIVENS received.

23 │      112.    Plaintiff SALLIE R. GORE was diagnosed with breast cancer. Following her
24 │ diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SALLIE R.
25 │ GORE nor her treating healthcare providers were aware of or informed by Defendants that
26 │ disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
27 │ Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
28 │ completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00076

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5       113.   Plaintiff SALLIE R. GORE underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that SALLIE R.

7  GORE received.

8       114.   Plaintiff SHELBY GRANT was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHELBY

10  GRANT nor her treating healthcare providers were aware of or informed by Defendants that

11  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18       115.   Plaintiff SHELBY GRANT underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that SHELBY

20  GRANT received.

21       116.   Plaintiff AMELIA GREEN was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff AMELIA

23  GREEN nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00077

1   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2   suit against Defendants was tolled by such delayed discover.

3         117.   Plaintiff AMELIA GREEN underwent her chemotherapy treatment. On

4   information and belief, McKesson Corporation distributed the TAXOTERE® that AMELIA

5   GREEN received.

6         118.   Plaintiff ROBYN GREER was diagnosed with breast cancer. Following her

7   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROBYN

8   GREER nor her treating healthcare providers were aware of or informed by Defendants that

9   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16        119.   Plaintiff ROBYN GREER underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that ROBYN

18  GREER received.

19        120.   Plaintiff CHARLOTTE GUNN was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHARLOTTE

21  GUNN nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00078

1    121.   Plaintiff CHARLOTTE GUNN underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that

3  CHARLOTTE GUNN received.

4    122.   Plaintiff TANYA GURNEY was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TANYA

6  GURNEY nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    123.   Plaintiff TANYA GURNEY underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that TANYA

16  GURNEY received.

17    124.   Plaintiff DORCILLE HADLEY was diagnosed with breast cancer. Following her

18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DORCILLE

19  HADLEY nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00079

125.    Plaintiff DORCILLE HADLEY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DORCILLE HADLEY received.

126.    Plaintiff GLENDA HAMNER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLENDA HAMNER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

127.    Plaintiff GLENDA HAMNER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GLENDA HAMNER received.

128.    Plaintiff BEVERLY HARCOURT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BEVERLY HARCOURT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00080

129.   Plaintiff BEVERLY HARCOURT underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BEVERLY HARCOURT received.

130.   Plaintiff BETTY HAWKINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BETTY HAWKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

131.   Plaintiff BETTY HAWKINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BETTY HAWKINS received.

132.   Plaintiff NANCY HEARNE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff NANCY HEARNE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00081

1    133.    Plaintiff NANCY HEARNE underwent her chemotherapy treatment. On

2    information and belief, McKesson Corporation distributed the TAXOTERE® that NANCY

3    HEARNE received.

4    134.    Plaintiff ADELFA HEVENER was diagnosed with breast cancer. Following her

5    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ADELFA

6    HEVENER nor her treating healthcare providers were aware of or informed by Defendants that

7    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13   suit against Defendants was tolled by such delayed discover.

14   135.    Plaintiff ADELFA HEVENER underwent her chemotherapy treatment. On

15   information and belief, McKesson Corporation distributed the TAXOTERE® that ADELFA

16   HEVENER received.

17   136.    Plaintiff MOVELL HOLLOWAY was diagnosed with breast cancer. Following

18   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MOVELL

19   HOLLOWAY nor her treating healthcare providers were aware of or informed by Defendants

20   that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26   suit against Defendants was tolled by such delayed discover.

27

28

Exhibit C
00082

137.   Plaintiff MOVELL HOLLOWAY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MOVELL HOLLOWAY received.

138.   Plaintiff BENDETTA HOSNEY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BENDETTA HOSNEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

139.   Plaintiff BENDETTA HOSNEY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BENDETTA HOSNEY received.

140.   Plaintiff ANNIE L. JACKSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANNIE L. JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00083

141.   Plaintiff ANNIE L. JACKSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ANNIE L. JACKSON received.

142.   Plaintiff PEGGY JACKSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PEGGY JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

143.   Plaintiff PEGGY JACKSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that PEGGY JACKSON received.

144.   Plaintiff WANDA JACKSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff WANDA JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

145.   Plaintiff WANDA JACKSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that WANDA JACKSON received.

146.   Plaintiff ANITA JACOBS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANITA

39

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00084

1   JACOBS nor her treating healthcare providers were aware of or informed by Defendants that

2   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

4   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8   suit against Defendants was tolled by such delayed discover.

9          147.   Plaintiff ANITA JACOBS underwent her chemotherapy treatment. On

10   information and belief, McKesson Corporation distributed the TAXOTERE® that ANITA

11   JACOBS received.

12          148.   Plaintiff ARLENE JEFFERSON THROWER was diagnosed with breast cancer.

13   Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

14   ARLENE JEFFERSON THROWER nor her treating healthcare providers were aware of or

15   informed by Defendants that disfiguring permanent alopecia can occur following treatment with

16   TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

17   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

18   loss as a result of receiving chemotherapy with TAXOTERE®.

19          149.   Plaintiff ARLENE JEFFERSON THROWER underwent her chemotherapy

20   treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that

21   ARLENE JEFFERSON THROWER received.

22          150.   Plaintiff CASSANDRA JOHNSON was diagnosed with breast cancer. Following

23   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

24   CASSANDRA JOHNSON nor her treating healthcare providers were aware of or informed by

25   Defendants that disfiguring permanent alopecia can occur following treatment with

26   TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

27   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

28   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00085

1  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

2  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

3  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

4      151.   Plaintiff CASSANDRA JOHNSON underwent her chemotherapy treatment. On

5  information and belief, McKesson Corporation distributed the TAXOTERE® that

6  CASSANDRA JOHNSON received.

7      152.   Plaintiff TANYA JOHNSON was diagnosed with breast cancer. Following her

8  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TANYA

9  JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that

10 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

11 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

12 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

13 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

14 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

15 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

16 suit against Defendants was tolled by such delayed discover.

17     153.   Plaintiff TANYA JOHNSON underwent her chemotherapy treatment. On

18 information and belief, McKesson Corporation distributed the TAXOTERE® that TANYA

19 JOHNSON received.

20     154.   Plaintiff DEBORAH JOLLA was diagnosed with breast cancer. Following her

21 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBORAH

22 JOLLA nor her treating healthcare providers were aware of or informed by Defendants that

23 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

24 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

25 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

26 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

27 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00086

1  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2  suit against Defendants was tolled by such delayed discover.

3       155.   Plaintiff DEBORAH JOLLA underwent her chemotherapy treatment. On

4  information and belief, McKesson Corporation distributed the TAXOTERE® that DEBORAH

5  JOLLA received.

6       156.   Plaintiff LILLIE JONES was diagnosed with breast cancer. Following her

7  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LILLIE

8  JONES nor her treating healthcare providers were aware of or informed by Defendants that

9  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

11 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15 suit against Defendants was tolled by such delayed discover.

16      157.   Plaintiff LILLIE JONES underwent her chemotherapy treatment. On information

17 and belief, McKesson Corporation distributed the TAXOTERE® that LILLIE JONES received.

18      158.   Plaintiff CLEDELL KEMP was diagnosed with breast cancer. Following her

19 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CLEDELL

20 KEMP nor her treating healthcare providers were aware of or informed by Defendants that

21 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

22 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

23 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

24 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

25 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

26 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

27 suit against Defendants was tolled by such delayed discover.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00087

1      159.   Plaintiff CLEDELL KEMP underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that CLEDELL

3  KEMP received.

4      160.   Plaintiff MARIE LACKEY was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARIE

6  LACKEY nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14      161.   Plaintiff MARIE LACKEY underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that MARIE

16  LACKEY received.

17      162.   Plaintiff ANGELA ANITA LAMB was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANGELA

19  ANITA LAMB nor her treating healthcare providers were aware of or informed by Defendants

20  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00088

1       163.   Plaintiff ANGELA ANITA LAMB underwent her chemotherapy treatment. On

2 information and belief, McKesson Corporation distributed the TAXOTERE® that ANGELA

3 ANITA LAMB received.

4       164.   Plaintiff GWEN LANCE was diagnosed with breast cancer. Following her

5 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GWEN

6 LANCE nor her treating healthcare providers were aware of or informed by Defendants that

7 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12 including; but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13 suit against Defendants was tolled by such delayed discover.

14       165.   Plaintiff GWEN LANCE underwent her chemotherapy treatment. On information

15 and belief, McKesson Corporation distributed the TAXOTERE® that GWEN LANCE received.

16       166.   Plaintiff RACINE LESTER was diagnosed with breast cancer. Following her

17 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RACINE

18 LESTER nor her treating healthcare providers were aware of or informed by Defendants that

19 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

20 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

21 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

22 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

23 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

24 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

25 suit against Defendants was tolled by such delayed discover.

26       167.   Plaintiff RACINE LESTER underwent her chemotherapy treatment. On

27 information and belief, McKesson Corporation distributed the TAXOTERE® that RACINE

28 LESTER received.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00089

1    168.   Plaintiff SHAUNTEL MAXWELL was diagnosed with breast cancer. Following

2   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

3   SHAUNTEL MAXWELL nor her treating healthcare providers were aware of or informed by

4   Defendants that disfiguring permanent alopecia can occur following treatment with

5   TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

6   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

7   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

8   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

9   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

10   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

11    169.   Plaintiff SHAUNTEL MAXWELL underwent her chemotherapy treatment. On

12   information and belief, McKesson Corporation distributed the TAXOTERE® that SHAUNTEL

13   MAXWELL received.

14    170.   Plaintiff FELICIA MCCLINTON was diagnosed with breast cancer. Following

15   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FELICIA

16   MCCLINTON nor her treating healthcare providers were aware of or informed by Defendants

17   that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

19   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23   suit against Defendants was tolled by such delayed discover.

24    171.   Plaintiff FELICIA MCCLINTON underwent her chemotherapy treatment. On

25   information and belief, McKesson Corporation distributed the TAXOTERE® that FELICIA

26   MCCLINTON received.

27    172.   Plaintiff BRITTANY J. MEECE was diagnosed with breast cancer. Following

28   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

Exhibit C
00090

1  BRITTANY J. MEECE nor her treating healthcare providers were aware of or informed by

2  Defendants that disfiguring permanent alopecia can occur following treatment with

3  TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

4  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

5  loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

6  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

7  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

8  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

9        173.    Plaintiff BRITTANY J. MEECE underwent her chemotherapy treatment. On

10 information and belief, McKesson Corporation distributed the TAXOTERE® that BRITTANY

11 J. MEECE received.

12       174.    Plaintiff KIMBERLY MENDOZA was diagnosed with breast cancer. Following

13 her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

14 KIMBERLY MENDOZA nor her treating healthcare providers were aware of or informed by

15 Defendants that disfiguring permanent alopecia can occur following treatment with

16 TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

17 Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

18 loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

19 conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

20 to her injuries, including, but not limited to, her development of alopecia. Accordingly,

21 Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

22       175.    Plaintiff KIMBERLY MENDOZA underwent her chemotherapy treatment. On

23 information and belief, McKesson Corporation distributed the TAXOTERE® that KIMBERLY

24 MENDOZA received.

25       176.    Plaintiff DEBORAH MEYERS was diagnosed with breast cancer. Following her

26 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBORAH

27 MEYERS nor her treating healthcare providers were aware of or informed by Defendants that

28 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

Exhibit C
00091

1  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
2  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
3. of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
4  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
5  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
6  suit against Defendants was tolled by such delayed discover.

7      177.    Plaintiff DEBORAH MEYERS underwent her chemotherapy treatment. On
8  information and belief, McKesson Corporation distributed the TAXOTERE® that DEBORAH
9  MEYERS received.

10

11                                **NATURE OF THE CLAIMS**

12      178.    Despite the fact that Defendants disclosed risks associated with TAXOTERE®
13  and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed
14  to either alert Plaintiffs, the public, and the scientific community in the United States or perform
15  further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring
16  permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed
17  to disclose the results of additional studies as Defendants learned new facts regarding the defects
18  and risks of their product.

19      179.    In particular, Defendants:
20          (a)    failed to disclose their investigation and research from 2005, including but
21                 not limited to the results of the GEICAM 9805 study, and failed to further
22                 investigate, research, study, and define fully and adequately the safety
23                 profile of TAXOTERE® in response to these studies;
24          (b)    failed to provide adequate warnings about the true safety risks associated
25                 with the use of TAXOTERE®;
26          (c)    failed to provide adequate warning regarding the pharmacokinetic and
27                 pharmacodynamic variability of TAXOTERE® and its effects on the
28                 degree or severity of side effects related to permanent alopecia;

Exhibit C
00092

1        (d)    failed to disclose in the "Warnings" Section that permanent alopecia is a

2                    frequent side effect associated with the use of TAXOTERE®;

3        (e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to

4                    instruct patients that permanent alopecia was a side effect, much less a

5                    frequent side effect, linked to TAXOTERE®;

6        (f)    failed to provide adequate instructions on how to intervene and/or reduce

7                    the risk of permanent alopecia related to the use of TAXOTERE®;

8        (g)    failed to provide adequate warnings and information related to the

9                    increased risks of permanent alopecia in certain genome groups;

10       (h)    failed to provide adequate warnings regarding the increased risk of

11                   permanent alopecia with the use of TAXOTERE® as compared to other

12                   products intended to treat the same conditions as TAXOTERE®; and

13       (i)    failed to include a **"BOXED WARNING"** related to permanent or

14                   persistent alopecia.

15     180.    During the years since first marketing TAXOTERE® in the U.S., Defendants

16 modified the U.S. labeling and prescribing information for TAXOTERE® on multiple

17 occasions. Defendants failed, however, to include any warning whatsoever related to permanent

18 alopecia despite Defendants' awareness of the frequency and severity of this side effect.

19     181.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew

20 or should have known that consumption of TAXOTERE® was associated with and/or would

21 cause disfiguring side effects including disfiguring permanent alopecia.

22     182.    Despite knowing that TAXOTERE® was likely to result in increased rates of

23 alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed

24 TAXOTERE® in the United States.

25     183.    Defendants failed to adequately conduct complete and proper testing of

26 TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

27     184.    From the date Defendants received FDA approval to market TAXOTERE®,

28 Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00093

1   Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with

2   disfiguring permanent alopecia.

3        185.   Defendants ignored the association between the use of TAXOTERE® and the

4   risk of disfiguring permanent alopecia.

5        186.   Defendants failed to disclose information that they possessed regarding their

6   failure to adequately test and study TAXOTERE® related to the side effect of disfiguring

7   permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

8   Defendants' false representations and failures to disclose information through the exercise of

9   reasonable diligence.

10       187.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

11  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

12  lasting in nature, and economic and non-economic damages, harms, and losses, including but not

13  limited to: past and future medical expenses; past and future loss of earnings; past and future

14  loss and impairment of earning capacity; permanent disfigurement including permanent

15  alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

16  harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

17  present, and future loss and impairment of the quality and enjoyment of life.

18                      **ESTOPPEL FROM PLEADING STATUTES OF**
                              **LIMITATIONS OR REPOSE**
19

20       188.   Plaintiffs incorporate by reference the averments of the preceding paragraphs of

21  the Complaint as if fully set forth at length herein.

22       189.   Plaintiffs are within the applicable statutes of limitations for the claims presented

23  herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

24  Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

25  permanent alopecia, and could not reasonably have discovered the defects and unreasonably

26  dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

27  the Defendants' failure to warn, suppression of important information about the risks of the

28  drug, including but not limited to the true risk benefit profile, and the risk of disfiguring

Exhibit C
00094

1  permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®,

2  and other acts and omissions.

3    190.   In addition, Defendants are estopped from relying on any statutes of limitations or

4  repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions,

5  which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health

6  care professionals and the general consuming public that Defendants' TAXOTERE® was

7  defective, unreasonably dangerous and carried with it the serious risk of developing the injuries

8  Plaintiffs have suffered while aggressively and continually marketing and promoting

9  TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to

10  disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

11  Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

12  internal concern about reports and studies finding an increased risk of disfiguring permanent

13  alopecia; suppression of information about these risks and injuries from physicians and patients,

14  including Plaintiffs; use of sales and marketing documents and information that contained

15  information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

16  and overstatement of the efficacy and safety of TAXOTERE®.

17    191.   Defendants had a duty to disclose that TAXOTERE® was defective,

18  unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

19  serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.

20  Defendants breached that duty.

21    192.   Plaintiffs, Plaintiffs' prescribing health care professionals and the general

22  consuming public, had no knowledge of, and no reasonable way of discovering, the defects

23  found in Defendants' TAXOTERE® or the true risks associated with their use at the time she

24  purchased and used Defendants' TAXOTERE®.

25    193.   Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

26  health care professionals or the general consuming public that Defendants' TAXOTERE® was

27  defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have

28  suffered and complained of herein.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00095

194.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

195.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

196.    After Defendants changed the TAXOTERE® prescription information in the United States to include information about permanent alopecia in December 2015, there ensued publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug. Plaintiffs acted with all reasonable diligence and speed upon discovering this information and timely files the present complaint.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

197.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

198.    Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

Exhibit C
00096

1   including a duty to assure that the product would not cause users to suffer unreasonable,
2   dangerous side effects.

3.      199.    Defendants failed to exercise reasonable care in the marketing, supplying,
4   promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in
5   that Defendants knew or should have known that using TAXOTERE® created a high risk of
6   unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting
7   in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of
8   life, economic loss, and loss of economic opportunity.

9       200.    The negligence of Defendants, their agents, servants, and/or employees, included
10   but was not limited to the following acts and/or omissions:

11          (a)    Selling TAXOTERE® without disclosing its dangers and risks;
12          (b)    Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs'
13                 physicians, the public, and the medical and healthcare profession of the
14                 dangers of TAXOTERE®;
15          (c)    Failing to provide adequate instructions regarding safety precautions to be
16                 observed by users, handlers, and persons who would reasonably and
17                 foreseeably come into contact with, and more particularly, use,
18                 TAXOTERE®;
19          (d)    Negligently advertising and recommending the use of TAXOTERE®
20                 without sufficient knowledge as to its dangerous propensities;
21          (e)    Negligently representing that TAXOTERE® was safe for use for its
22                 intended purpose, when, in fact, it was unsafe;
23          (f)    Negligently and falsely representing that TAXOTERE® was superior to
24                 other commercially available products to treat the same forms of cancer
25                 that TAXOTERE® was intended to treat;
26          (g)    Concealing information from Plaintiffs, Plaintiffs' physicians, the public,
27                 and the FDA in knowing that TAXOTERE® was unsafe, dangerous,
28                 and/or non-conforming with FDA regulations; and

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00097

(h)     Improperly concealing from and/or misrepresenting information to
Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the
FDA concerning the severity of risks and dangers of TAXOTERE®
compared to other forms of treatment for breast cancer.

201.    Defendants underreported, underestimated and downplayed the serious dangers
and risk associated with TAXOTERE®.

202.    Defendants negligently conveyed that the safety risks and/or dangers of
TAXOTERE® were comparable with other forms of treatment for the same conditions for
which TAXOTERE® was prescribed to treat.

203.    Defendants were negligent in the researching, supplying, promoting, packaging,
distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

(a)     Failed to accompany their product with proper and/or accurate warnings
regarding all possible adverse side effects associated with the use of
TAXOTERE®;

(b)     Failed to accompany their product with proper warnings regarding all
possible adverse side effects concerning the risks and dangers associated
with TAXOTERE®;

(c)     Failed to accompany their product with accurate warnings regarding the
risks of all possible adverse side effects concerning TAXOTERE®;

(d)     Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and
duration of such adverse effects, as the warnings given did not accurately
reflect the symptoms, or severity, of the side effects;

(e)     Failed to conduct adequate post-marketing surveillance, to determine the
safety, dangers, and risks associated with TAXOTERE®.

(f)     Failed to warn Plaintiffs and Plaintiffs' physicians before actively
encouraging the sale of TAXOTERE®, either directly or indirectly, orally
or in writing, about the need for more comprehensive and regular medical

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00098

1    monitoring than usual to ensure early discovery of potentially serious side

2    effects; and

3         (g)    Were otherwise careless and/or negligent.

4    204.   Despite the fact that Defendants knew or should have known that TAXOTERE®

5  caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring

6  permanent alopecia, Defendants continued and continue to market, manufacture, distribute,

7  and/or sell TAXOTERE® to consumers, including Plaintiffs.

8    205.   Defendants negligently and improperly failed to perform sufficient post-market

9  tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety

10  information that did not accurately represent the risks and benefits associated with the use of

11  TAXOTERE® as compared to other products already commercially available to treat the same

12  types of cancer TAXOTERE® was meant to treat.

13    206.   Defendants knew or should have known that consumers such as Plaintiffs would

14  use their product and would foreseeably suffer injury as a result of Defendants' failure to

15  exercise reasonable care, as set forth above.

16    207.   Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms,

17  damages, and losses.

18    208.   As a direct and proximate result of the use of TAXOTERE®, Plaintiffs

19  experienced disfiguring permanent alopecia.

20    209.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

21  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

22  lasting in nature, and economic and non-economic damages, harms, and losses, including but not

23  limited to: past and future medical expenses; psychological counseling and therapy expenses;

24  past and future loss of earnings; past and future loss and impairment of earning capacity;

25  permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

26  emotional distress; increased risk of future harm; past, present, and future physical and mental

27  pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

28  and enjoyment of life.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00099

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

210.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

211.    The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

212.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

213.    Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

214.    As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

215.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

Exhibit C
00100

1  harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

2  present, and future loss and impairment of the quality and enjoyment of life.

3  ### THIRD CLAIM FOR RELIEF

4  ### (Intentional Misrepresentation)

5  216.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

6  same force and effect as if fully set forth herein.

7  217.   Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs'

8  physicians, the medical and healthcare community, and the public in general that TAXOTERE®

9  had been tested and was found to be safe and effective for the treatment of certain forms of

10  cancer.

11  218.   When warning of safety and risks of TAXOTERE®, Defendants fraudulently

12  represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

13  public in general that TAXOTERE® had been tested and was found to be safe and/or effective

14  for its indicated use.

15  219.   Defendants concealed their knowledge of TAXOTERE®'s defects from

16  Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

17  specifically including, but not limited to, concealing their knowledge of the risk of developing

18  disfiguring permanent alopecia.

19  220.   Defendants concealed their knowledge of the defects in their products from

20  Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

21  221.   Defendants made these false representations with the intent of defrauding and

22  deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

23  community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

24  physicians, the public in general, and the medical community in particular, to recommend,

25  dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

26  including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

27  wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

28

Exhibit C
00101

222.   Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

223.   When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

224.   At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

225.   In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

226.   Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

227.   Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

228.   Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

229.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not

Exhibit C
00102

1   limited to: past and future medical expenses; past and future loss of earnings; past and future

2   loss and impairment of earning capacity; permanent disfigurement including permanent

3   alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

4   harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

5   present, and future loss and impairment of the quality and enjoyment of life.

6                          **FOURTH CLAIM FOR RELIEF**

7                     **(Concealment – Against Sanofi Defendants)**

8        230.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

9   same force and effect as if fully set forth herein.

10       231.   At all times during the course of dealing between Sanofi Defendants and

11   Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and

12   safety of TAXOTERE® for its intended use.

13       232.   Sanofi Defendants knew or were reckless in not knowing that its representations

14   were false.

15       233.   In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi

16   Defendants fraudulently concealed and intentionally omitted the following material information:

17            (a)   that TAXOTERE® was not as safe as other forms of treatment for which

18                  TAXOTERE® was marketed and sold to cancer patients;

19            (b)   that the risks of adverse events with TAXOTERE® were higher than

20                  those with other forms of treatment for which TAXOTERE® was

21                  marketed and sold to cancer patients;

22            (c)   that the risks of adverse events with TAXOTERE® were not adequately

23                  tested and/or known by Defendants;

24            (d)   that Defendants were aware of dangers in TAXOTERE®, in addition to

25                  and above and beyond those associated with other forms of treatment for

26                  cancer patients;

27

28

Exhibit C
00103

(e)     that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

234.     Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

235.     Sanofi Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

236.     Sanofi Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

237.     Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

238.     Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

239.     As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of

Exhibit C
00104

future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### FIFTH CLAIM FOR RELIEF
#### (Negligent Misrepresentation – Against All Defendants)

240. Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

241. Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

242. Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

243. Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

244. Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

245. As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

### SIXTH CLAIM FOR RELIEF
#### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

246. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

247. Defendants' conduct, as set forth above, was extreme and outrageous.

248. Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

249. Defendants' conduct caused Plaintiffs severe emotional distress.

250. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00105

1    lasting in nature, and economic and non-economic damages, harms, and losses, including but not

2    limited to: past and future medical expenses; past and future loss of earnings; past and future

3    loss and impairment of earning capacity; permanent disfigurement including permanent

4    alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

5    harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

6    present, and future loss and impairment of the quality and enjoyment of life.

7

8                            **SEVENTH CLAIM FOR RELIEF**

9                                **(Loss of Consortium)**

10

11       251.   Spouse plaintiffs complain of defendants, and each of them and for a cause of

12   action for loss of consortium allege as follow:

13       252.   Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this

14   Complaint as if fully set forth herein and further allege as follows:

15       253.   This cause of action is asserted by the Spouse Plaintiffs identified previously

16   whose spouses suffered personal injuries as a result of using Defendants product, who at all

17   times relevant to this action were, and are now, husband and wife.

18       254.   Subsequent to their injuries, Plaintiffs' were and are unable to perform the

19   necessary duties as a spouse and the work service usually performed in the care, maintenance

20   and management of the family home.

21       255.   Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by

22   TAXOTERE® until within two years of filing this Complaint.

23       256.   By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have

24   been and will continue to be deprived of the loss of love, companionship, comfort, care,

25   assistance, protection, affection, society, and moral support of their spouses, as to their damage,

26   in an amount presently unknown but which will be proved at the time of trial.

27       WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as

28   hereinafter set forth.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00106

## PRAYER FOR RELIEF

WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC.,  McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC. All non-California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 12, 2017               Respectfully submitted,

                                        **NAPOLI SHKOLNIK, PLLC**


                                        By:

                                        Jennifer Liakos
                                        *Attorney for Plaintiffs*

Exhibit C
00107